**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------X
                                     :

In the Matter of                      :
                                     :

MICHAEL FAILLACE,       :            M-2-238
                                     :           **ORDER**

                   Respondent.   :
----------------------------------------------------X

**BEFORE THE COMMITTEE ON GRIEVANCES OF THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK[1]**

       This matter comes before the Committee on Grievances for the United

States District Court for the Southern District of New York (the "Committee") to

consider the imposition of discipline upon Respondent Michael Faillace for

misconduct in connection with cases in this Court.  On December 30, 2020, the

Committee issued its Statement of Charges (the "Charges") against Respondent.

The Charges allege that Respondent underpaid clients in violation of court

orders, and that he made misrepresentations to the Grievance Committee in

connection with the Committee's investigation into those allegations.  The

Charges allege that Respondent refused to honor his clients' decision to settle

their claims.  By Order dated December 30, 2020 ("Order to Show Cause"),

Respondent was directed to show cause why he should not be disciplined for

having violated Rules 1.2(a), 1.5(a), 1.5(d)(2), 1.15(a), 1.15(c), 1.15(j), 3.3(a),

8.4(a)-(d) and 8.4(h) of the New York Rules of Professional Conduct (the "Rules").

---

[1] The members of the Committee are District Judge Katherine Polk Failla, Chair; Chief Judge
Laura Taylor Swain; District Judges P. Kevin Castel, John P. Cronan, Colleen McMahon, Alison J.
Nathan, Louis L. Stanton, and Mary Kay Vyskocil; and Magistrate Judges Stewart D. Aaron,
James L. Cott, and Judith C. McCarthy.

On October 8, 2021, Respondent submitted a declaration in which he admits to the Charges and the corresponding violations of the Rules. Accordingly, the Committee sustains the Charges.

## BACKGROUND

Respondent is the principal of Michael Faillace & Associates, P.C. (the "Faillace Firm" or the "Firm").   Among other things, the Faillace Firm represents plaintiffs in wage and hour cases arising under the Fair Labor Standards Act ("FLSA").

**A.    UNDERPAYMENTS TO CLIENTS**

From 2007 to 2019, Respondent regularly used a retainer agreement with clients that provided, in sum and substance, that if a recovery were made on the client's behalf, the client would pay the Faillace Firm for legal services rendered "the greater of a sum equal [to] 40% of any and all sums recovered either as a result of trial or by way of settlement (including attorneys fee awards) or the amount of 'reasonable attorneys fees' determined by the Court or agreed upon [by] the defendants."  Respondent's signature appears on all retainer agreements between clients and the Firm.

To that end, on numerous occasions detailed below, Respondent disregarded court orders issued in cases in this Court awarding attorneys' fees below 40% of the total settlement amount, and instead took funds to which clients were entitled into the Faillace Firm's business account as attorneys' fees in excess of the amount awarded.

2

### The *Salinas* Action

The Faillace Firm represented 13 plaintiffs in *Salinas, et al. v. Starjem Restaurant Corp., et al.*, 13-cv-02992 (AT) ("*Salinas*" or the "*Salinas* action").  A settlement was agreed to in the Salinas action for the total amount of $618,416.64.

In a written order issued on May 20, 2016, the Court approved the settlement and approved attorneys' fees in the amount of $177,168.00 and costs in the amount of $27,856.46, for a total amount of $205,024.46 to be paid to the Faillace Firm.  In doing so, the Court specifically rejected the Faillace Firm's request for attorneys' fees in the amount of 40% of the settlement amount, finding that "[a]n award of attorneys' fees in the amount of one-third of the settlement fund is 'consistent with the norms of' similar litigation in the Second Circuit," and, further, that the Faillace Firm had "not identified circumstances justifying a departure from these norms . . . ."  (Salinas Order at 4-5).

In disregard of the Court's order, the Faillace Firm transferred $280,259.58 of the total settlement proceeds from the *Salinas* action into its business account.   This resulted in each of the plaintiffs in the *Salinas* action receiving an underpayment of the amounts due to them under the Court's order.

### The *Briones* Action

The Faillace Firm represented two plaintiffs in *Briones, et al. v. Starjem Restaurant Corp., et al.*, 15-cv-04646 (GHW) ("*Briones*" or the "*Briones* action").

A settlement was agreed to in the *Briones* action for the total amount of $31,583.54.

Initially, the Faillace Firm requested attorneys' fees and costs totaling $12,873.54.  After a fairness hearing, the Faillace Firm reduced its requested attorneys' fees and costs to $10,384.12.  Subsequently, on May 24, 2016, the Court approved the settlement in the *Briones* action, and approved attorneys' fees and costs in the amount of $10,384.12, with the remaining $21,199.42 being due to plaintiffs.

In disregard of the Court's order, the Faillace Firm transferred $15,273.27 of the total settlement proceeds from the *Briones* action into its business account.  This resulted in each of the plaintiffs in the *Briones* action receiving an underpayment of the amounts due to them under the Court's order.

### The *Perez* Action

The Faillace Firm represented plaintiff Franklin Luis Perez in *Perez, et al. v. Barberry Rose Mgmt. Co. Inc., et al.*, 16-cv-00119 (JCF) ("*Perez*" or the "*Perez* action").  A settlement was agreed to in the *Perez* action for the total amount of $100,000.

On November 14, 2016, the Court entered a So-Ordered Stipulation of Discontinuance approving the settlement in the *Perez* action, which called for attorneys' fees and costs in the amount of $33,333.33, with the remaining $66,666.67 being due to plaintiff.

In disregard of the Court's order, the Faillace Firm transferred $50,000 of the total settlement proceeds from the *Perez* action into its business account

4

and disbursed $50,000 to plaintiff.  This resulted in the plaintiff in the *Perez* action receiving an underpayment of the amount due to him under the Court's order.

### The *Benitez* Action

The Faillace Firm represented plaintiff Juan Benitez in *Benitez, et al. v. 2067 Bake Corp., et al.*, 15-cv-08107 (JCF) ("*Benitez*" or the "*Benitez* action").

A settlement was agreed to in the *Benitez* action for the total amount of $45,000. The Faillace Firm requested $14,850 in attorneys' fees.  In a Memo Endorsement dated December 13, 2016, the Court approved the settlement in the *Benitez* action, and approved attorneys' fees and costs in the amount of $14,850, with the remaining $30,150 being due to plaintiff.

In disregard of the Court's order, the Faillace Firm transferred $18,000 of the total settlement proceeds from the *Benitez* action into its business account and disbursed $27,000 to plaintiff.  This resulted in the plaintiff in the *Benitez* action receiving an underpayment of the amounts due to him under the Court's order.

### The *Rugerio* Action

The Faillace Firm represented plaintiff Javier Solis Rugerio in *Rugerio, et al. v. Big Apple Meat Market, et al.*, 15-cv-06253 (KNF) ("*Rugerio*" or the "*Rugerio* action").

A settlement was agreed to in the *Rugerio* action for the total amount of $70,000.  On April 25, 2016, the Court entered an Order approving the

settlement in the *Rugerio* action, which called for attorneys' fees and costs in the amount of $23,333.33, with the remaining $46,666.67 being due to plaintiff.

In disregard of the Court's order, the Faillace Firm transferred $29,001.01 of the total settlement proceeds from the *Rugerio* action into its business account and disbursed $40,998.99 to plaintiff. This resulted in the plaintiff in the *Rugerio* action receiving an underpayment of the amounts due to him under the Court's order.

**The *Torres* Action**

The Faillace Firm represented plaintiff Leoncio Torres in *Torres v. P&S Select Foods Inc., et al.*, 15-cv-05386 (PGG) ("*Torres*" or the "*Torres* action").

A settlement was agreed to in the *Torres* action for the total amount of $75,000. On November 7, 2016, the Court entered a So-Ordered Stipulation and Order of Dismissal without Prejudice and without Costs approving the settlement in the *Torres* action, which called for attorneys' fees and costs in the amount of $25,567.67 with the remaining $49,432.33 being due to plaintiff.

In disregard of the Court's order, the Faillace Firm transferred $30,000 of the total settlement proceeds from the *Torres* action into its business account and disbursed $45,000 to plaintiff. This resulted in the plaintiff in the *Torres* action receiving an underpayment of the amounts due to him under the Court's order.

**The *Marquez* Action**

The Faillace Firm represented plaintiff David Conde in *Marquez, et al. v. A&M Health Grill, et al.*, 16-cv-01000 (JCF) ("*Marquez*" or the "*Marquez* action").

A settlement was agreed to in the *Marquez* action for the total amount of $20,000.  On December 5, 2016, the Court entered a Memo Endorsement approving the settlement in the *Marquez* action, and approving attorneys' fees and costs in the amount of $6,600 with the remaining $13,400 being due to plaintiff.

In disregard of the Court's order, the Faillace Firm transferred $8,000 of the total settlement proceeds from the *Marquez* action into its business account and disbursed $12,000 to plaintiff.  This resulted in the plaintiff in the *Marquez* action receiving an underpayment of the amounts due to him under the Court's order.

### The *Comonfort* Action

The Faillace Firm represented plaintiff Albino Comonfort in *Comonfort v. Les Brasseurs, Inc., et al.*, 16-cv-06389 (AJP) ("*Comonfort*" or the "*Comonfort* action").

A settlement was agreed to in the *Comonfort* action for the total amount of $15,000.  On July 6, 2017, the Court entered a So-Ordered Joint Stipulation of Dismissal with Prejudice approving the settlement in the *Comonfort* action, which called for attorneys' fees and costs in the amount of $5,000 with the remaining $10,000 being due to plaintiff.

In disregard of the Court's order, the Faillace Firm transferred $6,000 of the total settlement proceeds from the *Comonfort* action into its business account and disbursed $9,000 to plaintiff.  This resulted in the plaintiff in the

*Comonfort* action receiving an underpayment of the amounts due to him under the Court's order.

### The *Mendez* Action

The Faillace Firm represented plaintiff Victor Mendez in *Mendez, et al. v. QL Wholesome Food Inc., et al.*, 16-cv-04872 (ER) ("*Mendez*" or the "*Mendez* action").

A settlement was agreed to in the *Mendez* action for the total amount of $50,000. On April 4, 2018, the Court entered an Order approving the settlement in the *Mendez* action, and approving attorneys' fees and costs in the amount of $16,500 with the remaining $33,500 being due to plaintiff.

In disregard of the Court's order, the Faillace Firm transferred $20,000 of the total settlement proceeds from the *Mendez* action into its business account and disbursed $30,000 to plaintiff. This resulted in the plaintiff in the *Mendez* action receiving an underpayment of the amounts due to him under the Court's order.

### The *Aguilar* Action

The Faillace Firm represented plaintiffs Jesus Arellano Aguilar and Diana Victoria Caamal in *Aguilar, et al. v. T.R.F.C. Restaurant Enterprises, Ltd., et al.*, 17-cv-05960 (SN) ("*Aguilar*" or the "*Aguilar* action").

A settlement was agreed to in the *Aguilar* action for the total amount of $40,000. On May 8, 2018, the Court entered an Order approving the settlement in the *Aguilar* action, which called for attorneys' fees and costs in the amount of $13,333.33 with the remaining $26,666.67 being due to plaintiffs.

In disregard of the Court's order, the Faillace Firm transferred $16,000 of the total settlement proceeds from the *Aguilar* action into its business account and disbursed $24,000 to plaintiffs.  This resulted in the plaintiffs in the *Aguilar* action receiving an underpayment of the amounts due to them under the Court's order.

### The *Ixcoy* Action

The Faillace Firm represented plaintiff Dimas Israel Ixcoy Gregorio in *Ixcoy, et al. v. Royal Pizza of Third Ave., et al.*, 17-cv-00454 (AKH) ("*Ixcoy*" or the "*Ixcoy* action").

A settlement was agreed to in the *Ixcoy* action for the total amount of $17,500.  On July 19, 2018, the Court entered a So-Ordered Stipulation and Order of Dismissal with Prejudice approving the settlement in the *Ixcoy* action, and approved attorneys' fees and costs in the amount of $5,950 with the remaining $11,550 being due to plaintiff.

In disregard of the Court's order, the Faillace Firm transferred $7,000 of the total settlement proceeds from the *Ixcoy* action into its business account and disbursed $10,500 to plaintiff.  This resulted in the plaintiff in the *Ixcoy* action receiving an underpayment of the amounts due to him under the Court's order.

### The *Salgado* Action

The Faillace Firm represented plaintiff Azael Salgado in *Salgado, et al. v. 276-43 Gourmet Grocery Inc., et al.*, 18-cv-03934 (RWS) ("*Salgado*" or the "*Salgado* action").

A settlement was agreed to in the *Salgado* action for the total amount of $48,000. On October 5, 2018, the Court entered a So-Ordered endorsement approving the settlement in the *Salgado* action, and approving attorneys' fees and costs in the amount of $16,000 with the remaining $32,000 being due to plaintiff.

In disregard of the Court's order, the Faillace Firm transferred $19,200 of the total settlement proceeds from the *Salgado* action into its business account and disbursed $28,800 to plaintiff. This resulted in the plaintiff in the *Salgado* action receiving an underpayment of the amounts due to him under the Court's order.

### The *Mendoza* Action

The Faillace Firm represented plaintiff Joel Mendoza in *Mendoza, et al. v. Georgia's Eastside BBQ, Inc., et al.*, 18-cv-04452 (VEC) ("*Mendoza*" or the "*Mendoza* action").

A settlement was agreed to in the *Mendoza* action for the total amount of $10,000. On October 31, 2018, the Court entered a So-Ordered endorsement approving the settlement in the *Mendoza* action and attorneys' fees and costs in the amount of $3,200, with the remaining $6,800 being due to plaintiff.

In disregard of the Court's order, the Faillace Firm transferred $4,000 of the total settlement proceeds from the *Mendoza* action into its business account and disbursed $6,000 to plaintiff. This resulted in the plaintiff in the *Mendoza* action receiving an underpayment of the amounts due to him under the Court's order.

**B.    MISREPRESENTATIONS MADE TO THE GRIEVANCE COMMITTEE**

In a letter to Respondent dated February 4, 2019, Counsel to the Grievance Committee, Julie Allsman, informed Respondent that the Grievance Committee was investigating alleged violations of the New York Rules of Professional Conduct in connection with the *Salinas* action, the *Briones* action, the *Perez* action, and the *Benitez* action (the "February 2019 Grievance Committee Letter").

In reply to the February 2019 Grievance Committee Letter, Respondent's Counsel, Michael S. Ross, Esq., submitted a letter dated March 19, 2019 (the "March 2019 letter"), in which Respondent admitted that the Faillace Firm disbursed lesser amounts of the settlements in the *Salinas* action, the *Briones* action, the *Perez* action, and the *Benitez* action to the plaintiffs in those actions than were due under the terms of the settlement agreements approved by the Court.

The March 2019 Letter stated that since the Grievance Committee made Respondent aware of these errors, the Faillace Firm had instituted a number of remedial measures to ensure that future disbursements of settlement proceeds to the Faillace Firm's clients and attorneys' fees taken by the Faillace Firm into its business account were in accordance with the Court's orders.

Respondent's signature appears on the March 2019 Letter, verifying that Respondent read the March 2019 Letter and confirmed its accuracy.   In addition, Mr. Ross wrote to Ms. Allsman specifically confirming that Respondent had read the March 2019 Letter:

> On behalf of my client, Michael Faillace, Esq., I am submitting the enclosed response to the Committee on Grievances' February 4, 2019 letter to Mr. Faillace.   As I explained in the enclosed response letter, Mr. Faillace is blind; and, in that regard, I wanted to advise the Committee that Mr. Faillace has reviewed the enclosed response using a computer program for the blind that provides text-to-speech output of computer text documents.

(March 2019 Letter).

The March 2019 Letter incorrectly stated that Respondent assigned Gennadiy Naydenskiy, an attorney employed by the Faillace Firm, to visually review and confirm the amounts of checks received from defendants pursuant to settlement agreements approved by the Court before any of said checks made out to the Faillace Firm were deposited or any of said checks made out to clients of the Faillace Firm were provided to those clients.  In fact, Mr. Naydenskiy never visually reviewed and confirmed the amounts of checks received from defendants pursuant to settlement agreements approved by the Court before any such checks made out to the Faillace Firm were deposited or any such checks made out to clients of the Faillace Firm were provided to those clients.

The March 2019 Letter incorrectly stated that Respondent assigned Mr. Naydenskiy to review and confirm the amounts of all checks issued by the Faillace Firm's Office Manager from the Faillace Firm's IOLA Account and confirm the amounts of all transfers or earned fees from the Faillace Firm's IOLA Account to its business account.  In fact, Mr. Naydenskiy is not now, and has never been, routinely involved with the Faillace Firm's IOLA Account.  In addition, Mr. Naydenskiy is not now, and has never been, routinely involved in the disbursement of settlement proceeds to the Faillace Firm's clients.

12

The March 2019 Letter incorrectly stated that Respondent assigned Jesse Barton, an attorney employed by the Faillace Firm, to provide general supervision of the Faillace Firm's paralegal staff so that there would be a "sighted attorney to provide *overall* supervision of the Firm's paralegals." (March 2019 Letter at 36 (emphasis in original)).  Although Mr. Barton did provide some supervision over the paralegal staff at the Faillace Firm for a brief period of time, he was not providing general or overall supervision of the Faillace Firm's paralegal staff at the time the March 2019 Letter was submitted, nor has he served in that role since the March 2019 Letter was submitted.

In a subsequent sworn submission to the Committee, Respondent acknowledged that he had not advised Mr. Ross of the inaccuracies contained in the March 2019 Letter.

The misrepresentations described here were repeated in a letter submitted by Mr. Ross, dated October 16, 2020 (the "October 2020 Letter").  Specifically, Mr. Ross' letter stated, "as set forth in my March 19th letter, as part of the firm's remedial measures, Mr. Faillace assigned specific additional supervisory functions to Messrs. Barton and Naydenskiy."  That letter then stated that an additional attorney at the Faillace Firm, Clifford Tucker, Esq., had been added to support Mr. Naydenskiy's supervision of the distribution of settlement proceeds, stating, "Mr. Tucker performs his review separately and in addition to — not instead of — Mr. Naydenskiy's review."  (October 2020 Letter at 6). Mr. Ross then described an elaborate procedure through which Messrs. Naydenskiy and Tucker "double-check[ed]" the calculations of the Office

13

Manager before any transfers of settlement funds are made to clients from the Faillace Firm's IOLA account.  (*Id.*).

In a subsequent sworn submission to the Committee, Respondent acknowledged that he had not advised Mr. Ross of the inaccuracies contained in the October 2020 Letter at the time it was sent.

Respondent's counsel submitted a letter on November 24, 2020, in which Respondent sought to correct numerous misrepresentations made in the October 2020 Letter, including those described above.  However, the misrepresentations that were made in the verified March 2019 Letter were not explicitly corrected.

Since the misrepresentations initially were made in the March 2019 Letter, Respondent was fully aware that no attorneys in the Faillace Firm had been assigned to ensure that the Court's orders in FLSA cases were complied with and that, instead, settlement proceeds continued to be distributed both to clients and the Faillace Firm's business account solely by the Office Manager and Respondent and that the remedial measures represented in the March 2019 Letter had not in fact been implemented.

## C.   MISCONDUCT DURING SETTLEMENT DISCUSSIONS

The Faillace Firm represented three defendants in *Sanchez, et al.* v. *DPC New York Inc. et al.*, 17-cv-00455 (AJN) (SDA), in which it asserted both FLSA and New York Labor Law claims.  A mediation was held on May 2, 2018.

During mediation, two of Respondent's clients, Wilson Rodrigo Villena Sanchez and Gustavo Galarza, expressed to Respondent that they wanted to

14

settle their claims.  Respondent responded in Spanish that he would decide the amount of the settlement and that he would not allow them to settle.  As a result of Respondent refusing to honor his clients' decision to settle their claims, the case did not settle at the mediation.

## **DISCUSSION**

Rule 1.5(b)(5) of the Local Rules of the United States District Court for the Southern District of New York authorizes the Committee on Grievances to discipline an attorney if, after notice and opportunity to respond, it is found by clear and convincing evidence that,

> [i]n connection with activities in this Court, any attorney is found to have engaged in conduct violative of the New York State Rules of Professional Conduct as adopted from time to time by the Appellate Divisions of the State of New York.  In interpreting the Code, in the absence of binding authority from the United States Supreme Court or the United States Court of Appeals for the Second Circuit, this Court, in the interests of comity and predictability, will give due regard to decisions of the New York Court of Appeals and other New York State courts, absent significant federal interests.

On October 8, 2021, Respondent submitted a declaration wherein he admits to the Charges in the Statement of Charges and takes responsibility for having violated the Rules.  Respondent consents to the Committee entering an order of suspension for a period of two years as a sanction for his misconduct. Respondent also agreed to take certain remedial steps once he resumes his practice, which include:

> (i) the creation of a new and dedicated position of Managing Attorney, whose function it would be to:  a) supervise lawyers; b) supervise paralegals; c) review and monitor the firm's calendar to assure timely completion of court assignments and the meeting of all deadlines; and d) assign cases to staff who are best suited for tasks such as trials, hearings and written motions and briefs; and

e) review of all funds received and disbursed to ensure the proper disbursement of funds; and

(ii) the use of an outside CPA accountant to: a) independently reconcile the firm's operating and IOLA accounts, books and records on a monthly basis; and b) randomly select client disbursement checks to verify accuracy of calculations on not less than 10% of all IOLA disbursements.

Taking into consideration all of the circumstances, including the fact that Respondent has never before been disciplined in his 35 years of practice, it is the Committee's opinion that a two-year suspension is an appropriate and suitable sanction to be imposed upon Respondent.

## **DISPOSITION**

The Committee on Grievances, having carefully considered Respondent's submissions in response to the Order to Show Cause and Statement of Charges that were issued in this matter, finds that Respondent has raised no issues requiring a hearing.  *See* S.D.N.Y. Local Civil Rule 1.5(d)(4).  On the basis of the record and Respondent's own admissions, the Committee finds that Respondent acted in violation of Rules 1.2(a); 1.5(a); 1.5(d)(2); 1.15(a); 1.15(c); 1.15(j); 3.3(a); 8.4(a)-(d); and 8.4(h).  Accordingly, the Committee sustains all of the Charges in the Statement of Charges.

Pursuant to S.D.N.Y. Local Civil Rules 1.5(b)(5) and (c)(1), it is hereby ORDERED that Respondent is SUSPENDED, effective immediately, for a term of two years and until further order of this Court.

During the period of his suspension, Respondent may not share in any fee for legal services rendered by another attorney during the period of suspension

but may be compensated on a quantum meruit basis for services rendered prior to the effective date of the suspension. Pursuant to Local Civil Rule 1.4, Respondent has advised the Committee that he and his former law firm will be asserting retaining and charging liens in the cases as to which he has filed Motions to Withdraw based upon his suspension.

In accordance with Local Civil Rule 1.5(h)(3), Respondent is ORDERED to deliver a copy of this Order to the clerk of each federal, state, or territorial court, agency, and tribunal to which he is admitted to practice. Respondent is further ORDERED to deliver a copy of this Order to the clerk of each federal, state, or territorial court, agency, and tribunal to which he applies for admission (or reinstatement) to practice, including *pro hac vice* admission, simultaneously with his application.

The Clerk of Court is hereby directed to unseal the entire record of this matter.

Dated:     November 8, 2021
           New York, New York


Katherine Polk Failla
*Chair, Committee on Grievances of the*
*United States District Court for the*
*Southern District of New York*